**Law Offices of**

# Spadea & Associates, LLC

**204 East Chester Pike**
**P.O. Box 152**
**Ridley Park, Pennsylvania 19078**

| | |
|---|---|
| Telephone: (610) 521-0604 | Pennsylvania & New Jersey  Bars |
| Fax:        (610) 521-4515 | E-mail: GregoryS@att.net |

January 3, 2006

Honorable Anita B. Brody
United States Judge
7613 United States Court House
601 Market Street
Philadelphia, PA 19106-1740


        RE:    Dev Iyer v. John P. Snow, Secretary, Department of Treasury, et al.,
               Civil Action No. 04-CIV-2259


Dear Honorable Judge Brody,

        Enclosed please find plaintiff's motion and memorandum of law to vacate jury's verdict under FRCP 59(e) to prevent manifest injustice and render a verdict in favor of the plaintiff.

        Plaintiff certifies that this motion under FRCP 59(e) has been *filed* with the clerk of the court within 10 days after entry of judgment.


                        Respectfully Yours,
                        Law Offices Of Spadea & Associates, LLC


                        By: _____
                        Gregory J. Spadea, Esq.
                        Attorney for Plaintiff


cc:    Mr. Dev Iyer
       Ms. Barbara Rowland

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEV IYER,
              Plaintiff,
       vs.                                    **DOCKET NO. 04-CIV-2259**
MARK W. EVERSON, COMMISSIONER,
INTERNAL REVENUE SERVICE,
JOHN P. SNOW, SECRETARY,
DEPARTMENT OF THE TREASURY,
              Defendants

---

### PLAINTIFF'S MOTION  AND MEMORANDUM OF LAW TO VACATE JURY'S VERDICT UNDER FRCP 59(e) TO PREVENT MANIFEST INJUSTICE AND RENDER A VERDICT IN FAVOR OF THE PLAINTIFF

**LAW**: One of the grounds for amending a judgment is to correct a clear error of law or to prevent manifest injustice. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); *Collison V. International Chem. Workers Union Local 217*, 34 F.3d 233, 236 (4th Cir.1994); *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993).

When a party files a motion under FRCP 59(e) showing that the judgment contains a clear error of law, the district court should resolve the issue by granting the motion. *See , e.g., Collison*, 34 F.3d at 238; *Russel v. Delco Remy*, 51 F.3d 746, 749 (7th Cir. 1995). The same is true of an order based on a clear factual error. *Norman v. Arkansas Dept. of Educ.* 79 F.3d 748, 750 (8th Cir.1996).

**ARGUMENT:**      The jury in the present case deliberated for less than 90 minutes (which included time spent on a catered lunch), did not ask for a single exhibit, was mortified at the thought of finding a decision for the plaintiff and being retaliated by the Internal Revenue Service1,  and disregarded the inconsistent and conflicting testimony of Internal Revenue Service managers and employees, who lied with impunity.

Plaintiff bolsters his argument with the following legal points.

Plaintiff identified five issues that the jury heard testimony :

---

1 Notwithstanding entreaties to the contrary by Judge Brody that the identity of the jurors is known only to the court, despite plain sight evidence that both  plaintiff and defendant's attorneys Barbara Rowland, Susan Becker and IRS General Legal Services Attorney Bonnie S. Edwards possess all ten jurors name, city and state they live in and vital information about them.

1. Denial of travel time and pay while on a temporary detail from Nov 1998 through July 1999;
2. Denial of promotion to Supervising Tax Examiner;
3. Denial of promotion to Planning and Special Programs Coordinator;
4. Denial of promotion to Industry Economist;
5. IRS Management's Creation and toleration of a hostile work environment.

Denial Of Travel Time and Pay

On the first issue, Ms. Rowland and Ms. Becker said Mr. Iyer did not get travel time and pay because he was reassigned.

However, jury heard IRS Branch Chief Eleanor Jacobs and George Mullin testify that Mr. Iyer was transferred to Philadelphia and was no longer on a detail therefore he was not entitled to travel time and travel pay. Yet, the announcement for the temporary detail shown in Plaintiff's Exhibit 25, clearly indicates it was a temporary detail and not a reassignment.

Ms. Jacobs also admitted every person in Problem Resolution did the same type of work. Ms. Jacobs also testified that she was not aware of Mr. Iyer's prior Jan 1999 EEO complaint regarding his assignment to Problem Resolution regarding the lower graded work.

The real reason Ms. Jacobs denied Mr. Iyer travel time and travel pay was because she discriminated against him because of his race Asian Indian and/or national origin Indian. However we will never know the real reason why she discriminated against him because she knows it is illegal to discriminate and retaliate against any employee.

The jury heard testimony from Mr. Mullin, Ms. Heasley and Mr. Iyer that Ms. Heasley, Ms. Mary Taylor and Ms. Kathleen Schaffer all received travel time and travel pay and did the same work in the same work area yet Mr. Iyer did not get travel pay and travel time.

Supervisory Tax Examiner

On the second issue, Ms. Rowland and Ms. Becker said Mr. Iyer was not promoted in March 1999 to Supervisory Tax examiner because Mr. Mullin did not certify his application because it was not complete.

However the jury heard IRS Manager George Mullin testify that Branch Chief Ms. Eleanor Jacobs did not certify Mr. Iyer's application for the Supervising Tax Examiner position because neither she nor Chief Of Exam John Bohem were available on March 29, 1999. However, both Mr. Mullin and Mr. Iyer testified that Ms. Jacobs did certify

the application on March 9, 1999, when Mr. Iyer signed and submitted the package for the first time. See Plaintiff's Exhibit 1 Page 19.   Therefore it was Manager Mullin who failed to certify the application after repeated requests from Mr. Iyer between March 9, and March 29.

Mr. Iyer eventually was forced to write a memo to Mr. Mullin on March 29, 1999. See Plaintiff's Exhibit 1 Page 22, even though his desk was only 9 feet from Mr. Mullin's desk.

Mr. Mullin hated Mr. Iyer for filing an EEO complaint against him in Jan 1999, when Mr. Iyer testified that the detail to Problem Resolution was below grade work.   Mr. Mullin and Mr. Devaney also testified that some of the work was below grade.

Therefore it was Mr. Mullin who kept Mr. Iyer's application from being considered for promotion to Supervisory Tax Examiner by not certifying his application between March 9, and March 29, 1999.  Mr. Mullin also lied and said he was not aware of any prior EEO complaints in June 1999, yet Mr. Mullin later testified he signed a Affidavit from EEO Investigator Louis Larocca on March 18, 1999 regarding Mr. Iyer's January 1999 EEO complaint about being detailed to Problem Resolution in Nov 1998.

You heard testimony from Kathleen Schaffer stating she and Mr. Iyer did not do the same type of work because she was a grade 9 and Iyer was a grade 11.  She also testified that she handled 1040 returns yet she did not know the type of work Mr. Iyer performed.  Therefore, Ms. Schaffer did not answer honestly since she was performing the same work as Mr. Iyer based on Ms. Jacobs testimony.  In addition she stated she did not see the Saddam Hussein Poster in March 1999, yet she testified that she was still working in Jenkintown at that time.

Planning and Special Program Coordinator

For the second position, the Planning and Special Projects coordinator, Ms. Rowland and Ms. Becker said Mr. Iyer was not promoted to Planning and Special Program Coordinator in June 1999, because he was not ranked high enough by Mr. Brown, Ms. Heasley and Mr. Ermillio, the three ranking panel members.

Ms. Diane Heasley testified that she was not aware of Mr. Iyer's prior EEO Complaints until August 1999. However, Mr. James L. Capobianco testified that Ms. Heasley attended a managers meeting on March 18, 1999, where Mr. Iyer's January 1999 EEO complaint was discussed. Therefore, Ms. Heasley lied when she testified that she did not hear Dev Iyer discussed at any formal or informal manager meetings in 1999.

Ms. Heasely also testified she was a manager in King Of Prussia from April 1997 to April 1999, and that she never worked with Mr. Iyer during that period (April 1997 through Nov 1998) when they were both in King of Prussia.

Yet Mr. Iyer testified that Ms. Heasley did review and discussed his cases with him when his manager was out, and he helped Ms. Heasley by covering taxpayer service between April 1997 and Nov 1998.

Mr. Brown and Ms. Heaseley both testified that they saw the prior ranking of the 6 critical elements by the panel member that preceded them. Whereas Mr. Michael Ermillio testified that he did not see the prior ranking of the 6 critical elements by the panel member that preceded him. Therefore Mr. Ermillio was lying when he said that he was not aware of the prior numbers given by the other panel members that ranked the candidates before him.

Mr. Dennis Brown testified that he and Mr. Patrick Trofa violated their own Internal Revenue Manual (See Plaintiff Exhibit 7 Page 273) by giving Mr. William England a 60 day detail prior to promoting him to the detriment of Mr. Iyer and the other candidates who were not selected for that 60 day detail.  Mr. Brown and Mr. Trofa also testified that the 60 day detail gave Mr. England an advantage over Mr. Iyer by having that detail enabling him to get a 4 by all 3 panel members in the program duty critical element where Mr. Iyer got a 2 enabling Mr. England to be ranked 3rd on the Best Qualified List.

Mr. Trofa was the selecting official and testified that he selected the candidates in the order they were ranked by the panel and believes that is a best practice. So if there were 4 positions and Mr. Iyer was ranked 4th he would have been the 4th person selected.  Furthermore if there were only three positions and the candidate ranked third declined, the candidate ranked fourth would then be selected.

Mr. Brown and Mr. Trofa both testified that details for promotion of less than 120 days do not have to be advertised. (See Plaintiff Exhibit 7 Page 272).  Therefore, when Mr. Brown told Mr. Trofa to select Mr. Englund for a 60 day detail in early January 1999, Mr. Brown was setting Mr. England up to be promoted over Mr. Iyer and any one else on the Best qualified list who had not had a detail in Planning and Special Programs section.

Mr. Brown, Mr. Ermillio and Ms. Heasley were on the selecting committee and ranked each candidate independently and Mr. Iyer was ranked 4th out of the 5 best qualified candidates.  He stated that the numbers given to top 4 candidates by the three panel members were the same.  Therefore it was as if the panel members decided the order of the candidates before agreeing on the numbers each candidate would receive to ensure the person that management wanted was selected.  Although Mr. Iyer's annual evaluation average was 4.4 out of 5 his average rating by all 3 panel members was 3.1 ensuring he would not be in the top 3 as a direct result of not getting the 60 day detail that Mr. Englund got.

Mr. Ermillio and Ms. Heasley testified that they did not remember attending any meetings in 1999.  They also testified that they were not aware of Mr. Iyer's prior EEO

4

complaint that he filed in January 1999 over the below grade work in Problem Resolution  Program in April 1999 over the Supervisory Tax Examiner position.

Yet Mr. Capiobianco testified that both Mr. Ermillio and Ms. Heasley attended a November 5, 1998, meeting where Mr. Iyer's prior EEO complaints were discussed. Therefore Mr. Ermillio and Ms. Heasley lied when they said they were not aware of Mr. Iyer's prior EEO complaints in March 1999, when they ranked the Special Planning and Programs Coordinator position.

Industry Economist Position

On the third position, Ms. Rowland and Ms. Becker said that  Mr. Iyer was not offered the Industry Economist Position because he gave a bad interview.

However, you heard testimony from John Kaffenberg who testified that he spoke to George Mullin who was Dev Iyer's manager at the time in early July 1999 to set up an interview.  Mr. Kaffenberg also testified that Mr. Mullin told him that " Dev is a real good agent".  Yet both he and Mr. Mullin both testified that if they gave a failing 1.3 out of 5 evaluation to any of the agents that worked for them and if another manager called them about that agent 10 days later they would not give that agent a good evaluation.

It just does make sense that Mr. Mullin would give Mr. Iyer a scathing, failing evaluation and 10 days later tell Mr. Kaffenberg that Mr. Iyer was a "real good agent."

Therefore Mr. Kaffenberg lied when he testified that Mr. Mullin said that "Dev was a real good agent" after giving Dev a failing evaluation 10 days before.  In addition Mr. Kaffenberg lied when he stated he did not know about Mr. Iyer's March 1999 EEO complaint against Mr. Mullin.  Mr. Mullin testified that he signed a Affidavit from EEO Investigator Louis Larocca on March 18, 1999, regarding Mr. Iyer January 1999 EEO complaint about being detailed to Problem Resolution in Nov 1998.

Mr. Henry Singleton lied when he testified that Mr. William Bennett only told him positive things about Mr. Iyer and that Mr. Iyer was a very capable agent.

Mr. Bennett testified that he did tell Mr. Singleton about the problems Mr. Iyer had on Problem Resolution Detail regarding his past EEO complaints.  Mr. Bennett then testified that he did not tell Mr. Singleton that he was interviewed a month before in June 10, 1999, by the EEO Counselor Gail Preiss.  See Plaintiff's exhibit 2 Page 59.

Mr. Singleton lied when he said he was not aware of Mr. Iyer's prior EEO complaints because Mr. Bennett would have told him because Mr. Bennett testified that Mr. Singleton would have found out about the March 1999 EEO complaint anyway so he wanted Mr. Singleton to take the good with the bad.  Therefore Singleton lied when he testified that Mr. Bennett only told him positive things about Mr. Iyer.

What really happened was Mr. Singleton found out from Mr. William Bennett about Mr. Iyer's prior EEO complaints and that is what he really told Mr. Kaffenberg which is why Mr. Kaffenberg did not recommend Mr. Iyer be selected when Mr. Macasey turned the position down.  Mr. Kaffenberg already had his mind made up before ever meeting Mr. Iyer.

Mr. Singleton testified that he called Mr. Kaffenberg back on the same day to report that Mr. Iyer was a good employee who was very capable.  If Mr. Kaffenburg listened to Mr. Mullin or Singleton he would have followed the ranking order and offered the position to Mr. Iyer instead of discriminating and retaliating against Mr. Iyer by stating Mr. Iyer failed the interview after writing in July 15, 1999 that he was qualified and acceptable for the position.

In addition, Mr. Kaffenburg wrote a memo dated July 15, 1999, after he interviewed Mr. Iyer and Mr. Kevin Mackasey to Wayne Beyer who was the selecting official stating that "both candidates are qualified for the position and are acceptable." See Plaintiff's Exhibit 15 page 244.  Mr. Beyer selected Kevin MacKasey over Dev Iyer based on Mr. Kaffenburg's recommendation and memo.

Mr. Beyer violated the best practices and the IRS internal procedure by not giving Mr. Iyer who was the next highly qualified candidate proper consideration when Mr. MacKasey turned the position down.  See Plaintiff's exhibit 11 Page 513.  Mr. Beyer only considered the memo dated July 15, 1999 by Kaffenberg in making his decision. Mr. Beyer also testified that he did not speak with Mr. Kaffenberg prior to making the decision not to select Mr. Iyer.   Mr. Beyer also did not see the term paper written by Mr. Iyer that was in Mr. Kaffenberg's  possession.

Mr. Beyer testified that he did not have the hypotheticals for the 4 questions asked by Mr. Kaffenberg and did not understand Mr. Kaffenberg's notes from the interview and did not know what research and development meant and what "computstat" was so how could he give Mr. Iyer proper consideration.

Mr. Beyer testified that the reason he did not offer the position to Mr. Iyer is because Mr. Iyer gave a poor interview, even though Mr. Beyer did not conduct the interview and the real reason was to retaliate against Mr. Iyer for his past complaints.

However when Mr. MacKasey turned down the position and the announcement was cancelled.  Instead of following IRS best practices by selecting the next qualified candidate the IRS cancelled the position.

Based on Mr. Tropha, Mr. Bennett, Mr. Capiobianco and Mr. Britt's prior testimony that the Selecting Official selects candidates in ranking order Mr. Beyer decided to cancel the job rather than select Mr. Iyer in order to discriminate and retaliate against Mr. Iyer for his past complaints which Mr. Iyer filed against IRS management.

Another major inconsistency is that while Mr. Kaffenberg claims that Iyer failed the interview, the only other interview panel member (whose input was relied on by selecting official Wayne Beyer) Mr. Theodore Feindt testified that, "Both candidates passed the interview." Mr. Feindt also testified that, " They were both acceptable, but to two different degrees." Thus, Mr. Feindt's testimony proves that Mr. Kaffenberg lied when he testified that Mr. Iyer failed the interview.

Hostile Work Environment

Mr. Iyer testified that Mr. Mullin pressured him to select a job in Oakland California so he would be out of the Pennsylvania District.

Mr. James Capobianco testified that he attended a manager meeting in November 5, 1998 where Thomas Britt and Michael Ermillio were present and Mr. Britt said Mr. Iyer was a troublemaker and Chief Of Exam John Bohem was out to "get" Mr. Iyer to retaliate against for speaking out against IRS managements harassment and abuse of taxpayers.

Mr. James Campobianco testified that he attended a manager meeting in March 18, 1999, and George Mullin, Michael Ermillio and Diane Heasley, and Brian Finn heard that Iyer had filed previous EEO complaints in January 1999.

Mr. James Campobianco will testify that he attended a manager meeting in April 8, 1999, that he heard John Bohme and Brian Finn discuss about Mr. Iyer and the picture of Saddam Hussein.

IRS management created an acidic and hostile work environment by pressuring Mr. Iyer's coworkers to avoid him.  Mr. Iyer testified that Mr. Joseph Devaney told him that he is radioactive and refused to have lunch with Iyer after doing so for 7 years.

This indicates IRS Management created and tolerated a hostile work environment towards  Mr. Iyer.


Mr. Dev Iyer worked for the IRS for 11 years and did not receive a promotion after his second year. Therefore, the IRS did not promote Mr. Iyer in his last 10 years at the Agency because of his race, national origin, and age and because he reported Taxpayer abuse and was labeled a complainer by management.  This despite the fact that his annual evaluations were 4.4 out of 5.0 with 5.0 being the highest the employee can get for the last 5 years of his employment there.

Mr. Iyer also has an MBA and law degree from Temple University and is a Certified Public Accountant.  Mr. Iyer has been promoted 3 times in the 2 ½ years after leaving

7

the IRS and is currently a senior auditor for the Department of Justice.

Damages

I am confident that you will find that the IRS discriminated against Mr. Iyer by violating Title VII of the Civil Rights Act of 1964 by never promoting Mr. Iyer in his last 10 years at the IRS and by creating and tolerating a hostile work environment with the Saddam Hussein poster.

Mr. Iyer would like the Industry Economist Position with back pay as well as travel time and pay for the time he worked in Problem Resolution on a temporary detail. You may also award compensatory damages for the humiliation, shame, embarrassment and emotional suffering that Mr. Iyer endured while he worked at the IRS.

In addition Mr. Iyer must commute 7 hours per day taking 3 trains to Washington DC from his Havertown home which takes him away from his family 35 hours per week in his current position. In addition Mr. Iyer has to spend $950 per month out of his own pocket to take three trains to Washington, D.C. every morning.

**WHEREFORE,** plaintiff prays to this court to set aside the jury verdict and render a decision for the plaintiff and award damages outlined in the complaint.

Respectfully Submitted,

Dated this 3rd day of January, 2006
By:

_____

GREGORY J. SPADEA, ESQ.
**Attorney** *for* **Plaintiff**
**Attorney ID # 84882**
**EDPA Signature Validation**
**Code: GJS4116**
**204 East Chester Pike**
**P. O. Box 152**
**Ridley Park, Pa. 19078.**
**(610) 521-0604 (voice)**
**(610) 521-4515 (fax)**

8

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was mailed first-class, postage prepaid to:

Clerk of the Court
U.S. District Court Clerk's Office
Second Floor, Room 2609
601 Market Street
Philadelphia, PA 19106-1797.

The Honorable Anita B. Brody
Judge, U.S. District Court
7613 United States Court House
601 Market Street
Philadelphia, PA 19106-1797

Ms. Barbara Rowland, Esquire
Ms. Susan Becker, Esquire
Assistant United States Attorneys
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106


Dated : January 3, 2006

Gregory J. Spadea, Esquire
Attorney for Plaintiff

9